(865 P.2d 1078)
No. 69,467

STATE OF KANSAS, *Appellant,* v. MICHAEL DISMAS NINCI,
*Appellee.*
Petition for review denied 254 Kan. 1009 (1994).

Opinion filed December 30, 1993.

*Debra A. Vermillion*, assistant district attorney, *Paul J. Morrison*, district attorney, and *Robert T. Stephan*, attorney general, for the appellant.

*Thomas J. Erker* and *Kathryn A. Seeberger*, of Overland Park, for the appellee.

Before BRISCOE, C.J., ELLIOTT and LEWIS, JJ.

LEWIS, J.: The defendant stands charged with murder. On defendant's motion, the trial court suppressed certain evidence. The State of Kansas prosecutes this interlocutory appeal from the order of suppression.

Michael Owen was found dead, lying face down in the front yard of his residence in Johnson County. He had sustained two deep contusions to the rear of his head and his throat had been cut. It was also apparent that certain items of personal property had been removed from his residence.

Initially, the police investigation focused on an individual by the name of Glen Ford. During their investigation of Ford, the name of the defendant surfaced as the prime suspect. The police obtained a statement from one witness who related that she had been told by Glen Ford that he and the defendant had been at the home of the decedent on or about the time of the homicide. The witness went on to relate that Ford had returned the evening of the homicide and had abruptly left the area. According to the witness, Ford was fearful of the defendant, who the witness believed had slit another person's throat in Westport and was some kind of "enforcer."

The police then sought out the defendant for questioning and went to his residence. They parked their car in the exit of a parking lot which the defendant had entered. When the defendant tried to leave the parking lot, he was confronted by the police officers. The officers initially took his driver's license and patted him down for weapons. He was not, however, arrested. After a period of time, the police officers asked the defendant if he would voluntarily come to the Leawood Police Department and submit to an interview. The defendant acquiesced in this request, his

driver's license was returned, and he voluntarily followed the police officers to the Leawood Police Department.

The defendant was not placed under arrest upon his arrival at police headquarters. He was placed in a room which had a video camcorder trained directly on him. The defendant was apparently unaware of the presence of the camcorder.

The police began the questioning at 7:08 p.m. and it continued until approximately 10:30 p.m. At approximately 8:10 p.m., the defendant was given his *Miranda* rights and signed a waiver of those rights. The entire interview is on videotape, and this videotape was reviewed by the trial court.

At first, the defendant denied knowing anything about the homicide, but he later began to concede that he was at least present when the homicide took place. He admitted that he had taken certain items from the decedent's home at the request of Ford, of whom the defendant claimed to have been in fear.

At approximately 10:20 p.m., the police presented the defendant with consent to search forms. The defendant was asked to sign these forms and consent to various searches. He was told that if he would sign the forms, it would show his willingness to cooperate and that if he would not sign the forms, the authorities would obtain a search warrant. At this point, the defendant said, "I'm just asking you . . . I mean, I know I'm trying to help you out, but do I, I, ah, I mean, I mean, I don't know, *do I need to have a lawyer right now*? I understand this and I want to help." (Emphasis added.) The officers did not respond to the defendant's inquiry or attempt to clarify whether he was invoking his Fifth Amendment right to counsel. Instead, the officers ignored the inquiry, continued the interview, and obtained the signed consent forms. These forms were apparently used to collect some evidence. The record also reveals that a search warrant was issued and executed and that some evidence was seized via the search warrant and not via the consent forms.

The defendant filed a motion to suppress his statements and all evidence obtained under the consent to search forms. He argued for suppression on the theory that the evidence was obtained in violation of his *Miranda* rights. He asked the trial court to suppress his statements and all evidence seized as a result of those statements. The trial court conducted a lengthy hearing on

the issue and ultimately held as follows: (1) All statements made by the defendant up until he was presented with a consent to search form are admissible and were not obtained in violation of the defendant's *Miranda* rights. (2) The defendant's inquiry about whether he needed a lawyer was ambiguous regarding whether it was a request for counsel. At this point, all interrogations should have been terminated except for questions designed to clarify whether the defendant was requesting counsel. (3) All statements made by the defendant after he made the inquiry about needing an attorney were obtained in violation of his *Miranda* rights and must be suppressed. (4) All evidence seized as a result of the consent to search forms signed by the defendant is inadmissible and suppressed.

The State appeals from the order of suppression. We affirm the decision of the trial court.

## EQUIVOCAL OR AMBIGUOUS REQUESTS FOR COUNSEL

This appeal involves the question of what procedure must be followed during an interrogation if, at some point in the interview, the suspect requests counsel to be present. *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602 (1966), provides an accused with an absolute right to counsel during questioning by the police under certain designated circumstances. Any statement taken in violation of a suspect's *Miranda* rights will be suppressed. In addition, *Miranda* gives the accused the right to terminate an interview at any time by demanding the right to consult with an attorney. If such a demand is not granted, any statements obtained from the suspect from that point on will be suppressed.

The first question we must resolve is whether the defendant made an ambiguous or equivocal request for counsel during his interrogation by the police officers. If he did, what must the authorities do when such a request is made during an interview? The issue appears to be one of first impression in this state. It has, however, been the subject of many federal court decisions.

In this case, the defendant initially waived his *Miranda* rights. After waiving those rights and as the questions became more specific, the defendant inquired of the police officers, "[D]o I

need to have a lawyer right now?" Was that question an ambiguous or equivocal request for counsel?

In resolving this issue, we must keep in mind our scope of review. The trial court concluded that the question was an ambiguous request for counsel and suppressed all evidence obtained in violation of the defendant's *Miranda* rights. This decision was reached in resolving a motion to suppress.

"Upon the hearing of a motion to suppress evidence, the State bears the burden of proving to the trial court the lawfulness of the search and seizure. An appellate court will uphold a trial court's suppression of evidence if that ruling is supported by substantial competent evidence." *State v. Garcia,* 250 Kan. 310, Syl. ¶ 1, 827 P.2d 727 (1992).

"If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence this court on review will not substitute its view of the evidence for that of the trial court." 250 Kan. 310, Syl. ¶ 2.

Our scope of review requires that we affirm the decision of the trial court if it is based on substantial competent evidence. We conclude that it was.

The Supreme Court of the United States in *Connecticut v. Barrett,* 479 U.S. 523, 529-30, 93 L. Ed. 2d 920, 107 S. Ct. 828 (1987), indicates that a suspect's alleged request for counsel must be given a broad interpretation *only* when the defendant's words, understood as ordinary people would understand them, *are ambiguous.* If the words are not ambiguous, no interpretation is required, and no broad construction in favor of the right to counsel need be given.

In this action, we perceive a great deal of ambiguity in the defendant's question. It is possible that he was asking a simple question, it is possible he was requesting the right to counsel, or he may have simply been asking for an attorney before signing the consent forms. The ambiguity was not clarified by the police officers, and we are required to construe that statement liberally in favor of a request for counsel.

We do not mean to imply, and we do not hold, that the mere utterance of the words "attorney" or "lawyer" during questioning invokes the right to counsel as a matter of law. "The word 'attorney' has no talismanic qualities. A defendant does not invoke his right to counsel any time the word falls from his lips." *United States v. Jardina,* 747 F.2d 945, 949 (5th Cir. 1984). Whether

an ambiguous or indecisive statement by a suspect constitutes a request for counsel under *Miranda* is a legitimate question of fact to be determined by the trial court from all of the circumstances shown. We will not reverse the trial court's determination of a question of fact if that determination is supported by substantial competent evidence.

That the question is one for the finder of fact accounts for the diversity of the decisions on this issue. A careful reading of the federal decisions indicates that most of the appellate courts were involved in reviewing a trial court's finding of fact with all the limitations that review imposes upon the appellate process. In the overwhelming majority of the cases decided, the appellate courts affirmed the decision of the trial court on whether a defendant's ambiguous comments constituted request for counsel.

In the following cases, the statements made have been found *not* to have been equivocal requests for counsel:

(1) *Poyner v. Murray*, 964 F.2d 1404, 1411 (4th Cir. 1992). "Didn't you tell me I had the right to an attorney?"

(2) *United States v. Bettenhausen*, 499 F.2d 1223, 1231 (10th Cir. 1974). Defendant asked agent "whether he was in trouble" and "whether he needed a lawyer." We note that, in *Bettenhausen*, there was no discussion as to whether defendant's statement did or did not constitute an ambiguous request for counsel, but the trial court refused to suppress evidence obtained after that statement was made.

(3) *United States v. Jardina*, 747 F.2d at 948. The agent testified: "He stated he knew he didn't have to talk to me. And that he wasn't going to on certain matters. That he was interested in seeing what type of deal he could arrange between the government and his attorney."

(4) *Bradburn v. McCotter*, 786 F.2d 627, 629 (5th Cir. 1986). Defendant stated he "wanted to wait until he got back to Dallas to get a court appointed lawyer."

(5) *Smith v. Illinois*, 469 U.S. 91, 83 L. Ed. 2d 488, 105 S. Ct. 490 (1984). During an interrogation, the officer told defendant he had a right to a lawyer and to have a lawyer present during the questioning. When the officer asked defendant if he understood, defendant replied, "Uh, yeah. I'd like to do that."

(6) *Connecticut v. Barrett*, 479 U.S. 523. During questioning, defendant indicated he did not want to make a written statement outside the presence of counsel, but that he was willing to talk to the police.

(7) *Norman v. Ducharme*, 871 F.2d 1483, 1486 (9th Cir. 1989), *cert. denied* 494 U.S. 1031 (1990). During questioning, defendant asked if he should see a lawyer.

In other cases, the request was found to be at least an equivocal request for counsel:

(1) *Nash v. Estelle*, 597 F.2d 513 (5th Cir.), *cert. denied* 444 U.S. 981 (1979). Defendant stated a desire to speak to counsel and also a desire to continue with the interview.

(2) *United States v. Fouche*, 833 F.2d 1284, 1287 (9th Cir. 1987), *cert. denied* 486 U.S. 1017 (1988). Defendant, during questioning, stated he "might want to talk to a lawyer."

(3) *Towne v. Dugger*, 899 F.2d 1104, 1107 (11th Cir.), *cert. denied* 498 U.S. 991 (1990). Defendant asked, "[O]fficer, what do you think about whether I should get a lawyer?"

(4) *United States v. Cherry*, 733 F.2d 1124, 1131 (5th Cir. 1984), *cert. denied* 479 U.S. 1056 (1987). Defendant stated, "Maybe I should speak to an attorney."

The one thing most of the decisions have in common is that the question is one of fact, and appellate courts show deference to a trial court's findings of fact.

In this case, the trial court found that the defendant's statements did amount to an equivocal request for counsel. We see this as a fact-sensitive issue. The trial court watched the videotape and conducted the suppression hearing. It heard all the testimony of the witnesses and was in a position to judge the subtle nuances in the testimony and the context in which statements were made. We conclude that the trial court's finding that the defendant made at least an ambiguous request for counsel is supported by substantial competent evidence, and we affirm that finding.

Having concluded that the trial court was correct in determining that the defendant made an equivocal request for counsel, the next step is to determine the consequences of ignoring that request.

"Police questioning after an ambiguous or equivocal request for an attorney must cease, except that police may clarify the request." *Norman v. Ducharme*, 879 F.2d at 1486.

In *United States v. Jardina*, 747 F.2d at 948, the court indicated:

"Jardina is correct in asserting that once an accused requests an attorney, all interrogation must cease until the attorney is present. *Miranda v. Arizona*, 384 U.S. 436, 474, 86 S. Ct. 1602, 1628, 16 L. Ed. 2d 694 (1966). Jardina also relies on *United States v. Cherry*, 733 F.2d 1124 (5th Cir. 1984) for the proposition that if an accused even equivocally invokes the right to an attorney, future questioning of the suspect must be limited to clarifying whether the person wants to consult with an attorney. Further interrogation 'cannot be used as a means of eliciting any incriminating statements from the suspect relating to the subject matter of the interrogation.'"

In *Towne v. Dugger*, 899 F.2d at 1106-07, the court indicates:

"We cannot agree, however, with the district court's conclusion that Towne's Fifth Amendment rights were not violated in this case. The Fifth Amendment requires that when a person requests an attorney during a custodial interrogation, all questioning must stop until an attorney is present, unless the defendant subsequently initiates conversation with the authorities. *Edwards v. Arizona*, 451 U.S. at 477, 101 S. Ct. at 1880, 68 L. Ed. 2d at 378. This is a 'rigid prophylactic rule', *Smith v. Illinois*, 469 U.S. 91, 95, 105 S. Ct. 490, 492, 83 L. Ed. 2d 488 (1984), and courts are required 'to give a broad, rather than a narrow interpretation to a defendant's request for counsel.' *Michigan v. Jackson*, 475 U.S. 625, 633, 106 S. Ct. 1404, 1409, 89 L. Ed. 2d 631 (1986). These principles apply equally whether the defendant's request is explicit or equivocal. *Owen v. Alabama*, 849 F.2d 536, 539 (11th Cir. 1988); *Thompson v. Wainwright*, 601 F.2d 768, 771 (5th Cir. 1979); *Nash v. Estelle*, 597 F.2d 513, 517 (5th Cir.) (en banc), *cert. denied*, 444 U.S. 981, 100 S. Ct. 485, 62 L. Ed. 2d 409 (1979). 'When a defendant makes an equivocal request for an attorney during a custodial interrogation, "the scope of that interrogation is immediately narrowed to one subject and one subject only. *Further questioning thereafter must be limited to clarifying that request* until it is clarified." Any statement taken by the state after the equivocal request for counsel is made, but before it is clarified as an effective waiver of counsel, violates *Miranda* [*v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966)].' *Owen*, 849 F.2d at 539 (quoting *Thompson*, 601 F.2d at 771.). Therefore, as the district court noted, the threshold inquiry with regard to the waiver of the right to counsel is whether the right to counsel was in fact invoked."

The failure of the police to respond to an equivocal request for counsel requires the suppression of any statements made subsequent to that request and any evidence seized as a result.

We believe that invoking the exclusionary rule under the circumstances is appropriate. The exclusionary rule will, we believe, serve as a deterrent to police officers from ignoring statements such as the one in the instant matter. In the final analysis, the statement remains ambiguous primarily due to the failure of the authorities to clarify what the defendant intended when the statement was made. We believe that invoking the exclusionary rule when there is a failure to clarify will encourage the authorities not to ignore even an ambiguous request for counsel. We adopt the approach taken by the Fifth Circuit in *United States v. Cherry*, 733 F.2d 1124, 1130-31 (5th Cir. 1984), when it held as follows:

"If a suspect is indecisive in his request for counsel, law enforcement officials must cease the interrogation unless they ask the suspect further questions to clarify whether the suspect wants to consult with an attorney before continuing with the interrogation. However, such questioning is to be limited to this clarification and cannot be used as a means of eliciting any incriminating statements from the suspect relating to the subject matter of the interrogation.

. . . .

"[N]o statement taken after [an equivocal] request is made and before it is clarified as an effective waiver of the present assistance of counsel can clear the *Miranda* bar."

Under *Cherry*, it is the failure of the authorities to clarify the suspect's ambiguous request which triggers the exclusionary rule and renders the statements inadmissible. This approach places the burden of clarifying an ambiguous request on the investigating officers. If they fail to clarify the suspect's inquiry, it will forever remain ambiguous. Under these circumstances, we must construe an ambiguous request broadly in favor of a defendant and of protecting his or her Fifth Amendment rights. Such a broad construction will inevitably result in a decision suppressing the statements made following such a request.

An excellent example of what we perceive to be the proper method of dealing with an ambiguous request is illustrated by *Nash v. Estelle*, 597 F.2d at 516-17. In that case, the defendant made rather ambiguous statements concerning his desire for an attorney during interrogation. The authorities questioning the defendant followed up on his comments and engaged the defendant

in an extended discussion designed to clarify those comments. The culmination of that discussion was as follows:

"NASH:    I would like to have a lawyer, but I'd rather talk to you.
"FILES:   Well, what that says there is, it doesn't say that you don't ever want to have a lawyer, it says that you don't want to have a lawyer here, now. You got the right now, and I want you to know that. But if you want to have a lawyer here, well, I am not going to talk to you about it.
"NASH:    No, I would rather talk to you.
"FILES:   You would rather talk to me? You do not want to have a lawyer here right now?
"NASH:    No, sir.
"FILES:   You are absolutely certain of that?
"NASH:    Yes, sir." 597 F.2d at 516-17.

Based on the officer's clarification of the defendant's desires, the Fifth Circuit Court of Appeals was able to determine that the defendant's *Miranda* rights had not been violated. If the officers in this action had engaged the defendant in this sort of clarifying discussion, there would be no argument or mystery as to what he meant by his comments. They did not; they chose to ignore his comments, and we affirm the decision of the trial court suppressing the defendant's statements made after the consent to search forms were presented.

## EXTENT OF SUPPRESSION

The State argues that, if the defendant did invoke his right to counsel, he did so only as to the signing of the consent forms. It suggests that, based on this interpretation, we should admit all of the defendant's statements with the exception of those relating to the consent forms. We do not agree.

The principal reason for the suppression of the defendant's statements is the failure of the authorities to clarify his ambiguous request during interrogation. Without clarification, we can only speculate about the extent of his request. The state of the record requires that we broadly interpret the request in favor of protecting his *Miranda* rights. Under all of the circumstances shown, we decline to restrict the trial court's suppression order only to the signing of the consent forms.

## SEARCH WARRANT, INEVITABLE DISCOVERY, ETC.

The trial court's order suppressed only evidence seized by the

State pursuant to the consent forms signed by the defendant. That order does not suppress evidence seized via the search warrant. Despite this fact, the parties debate whether evidence seized under the search warrant should be suppressed.

We consider the parties' debate over evidence obtained by the search warrant to be premature. There is nothing in the order of the trial court which implies that such evidence is inadmissible. That is not an issue on appeal. No hearing was conducted to suppress evidence seized under the search warrant issued. We are unable to deal with that question on this appeal. It is possible that the question will be raised and argued at some point on remand, but until that occurs, no such issue exists. We hold that the question of whether evidence seized under the search warrant issued should be suppressed is not before this court, and we do not reach that question.

The State next appears to argue that the "inevitable discovery doctrine" outlined in *State v. Waddell*, 14 Kan. App. 2d 129, 137, 784 P.2d 381 (1989), is applicable to the evidence seized under the consent to search forms. Once again, we do not consider the record sufficient to permit us to review the inevitable discovery issue. That issue is not even mentioned in the order of the trial court. It does not appear that it was even raised to the trial court. We cannot discern whether the issue relates to the search warrant or to the consent to search forms. Inevitable discovery is not an issue we can decide on the record presented. This issue may also arise on remand, but, at this point, we do not reach the issue.

In summary, we hold as follows: (1) The question of whether a suspect has made an ambiguous, indecisive, or equivocal request for counsel during an interview by the police is a question of fact to be resolved by the trial court from the totality of the evidence presented. (2) If, during an interrogation, a suspect makes an ambiguous, indecisive, or equivocal request for counsel, the officials must cease interrogation unless they ask the suspect further questions to clarify whether the suspect wants to consult with an attorney before continuing with the interrogation; however, such questioning is to be limited to this clarification and cannot be used as a means of eliciting any incriminating statements from the suspect relating to the subject matter of inter-

rogation. (3) After a suspect has made an ambiguous, indecisive, or equivocal request for counsel, failure of the interrogating authorities to clarify whether the suspect wants to resume interrogation without counsel before posing additional questions renders that portion of the suspect's statement taken after such request was made involuntary and inadmissible. (4) A waiver of *Miranda* rights at the start of questioning does not prevent a suspect from effectively invoking these rights during the interrogation when the suspect believes it would be in his or her best interests to do so. (5) The decision to apply the exclusionary rule under the facts discussed is done to deter the authorities from violating a defendant's *Miranda* rights by ignoring the defendant's ambiguous, indecisive, or equivocal request for counsel during interrogation.

The interlocutory appeal by the State is denied.

Appeal denied.