(150 P.3d 918)
No. 95,303

STATE OF KANSAS, *Appellee*, v. SHANON S. GREEVER, *Appellant*.

Opinion filed February 2, 2007.

*Jennifer Conkling*, of Kansas Appellate Defender Office, for appellant.

*Thomas R. Stanton*, deputy district attorney, *Keith E. Schroeder*, district attorney, and *Phill Kline*, attorney general, for appellee.

Before McAnany, P.J., Elliott and Buser, JJ.

McAnany, J.: The State charged Shanon S. Greever with possession of marijuana with intent to sell and possession of marijuana without drug tax stamps affixed. Greever moved to suppress his statements and the evidence obtained at the scene of his arrest. Following a hearing at which both Greever and the arresting officer testified, the district court suppressed Greever's statements but not the marijuana which was taken by the officer from Greever's pocket.

Following the presentation of the State's evidence at trial, Greever moved for a judgment of acquittal and renewed his suppression motion. Though expressing real reservations, the district court overruled the motions. Since no evidence was presented by Greever, the case then was submitted to the jury which convicted Greever on both counts. Greever now appeals, claiming the district court erred in not suppressing the marijuana evidence. Though Greever raises several issues, we will focus on whether the officer had reasonable suspicion to believe Greever committed a crime so as to justify his seizure, since this issue is the keystone to Greever's convictions.

The credible evidence as determined by the district court at the suppression hearing established that Deputy Sheriff Justin Maxfield sought to effect a purely pretextual stop of an automobile occupied by a long-haired driver based upon a claimed traffic violation. Greever, the driver, approached a "T" intersection from the north. His only options at the intersection were to turn either east or west. Immediately ahead of Greever was Maxfield's patrol car, also southbound. Maxfield observed Greever through his rear view mirror as Greever approached. Greever did not signal his intention to turn at the "T" intersection until his vehicle came to a stop behind Maxfield's patrol car. Maxfield proceeded to turn

east and intended to wait for Greever to also turn east, at which time Maxfield would initiate a traffic stop for violating K.S.A. 8-1548(b). K.S.A. 8-1548(b) requires a motorist to signal an intention to turn at least 100 feet before doing so. After Greever completed his turn, Maxfield attempted to follow Greever but lost him in traffic. Lest Greever escape, Maxfield retraced his route and found Greever's automobile stopped along the side of an adjoining road. Maxfield stopped his patrol car behind Greever's automobile, activated his emergency lights, approached Greever's automobile, and advised Greever of the traffic infraction. At this point, Maxfield detected the odor of burnt marijuana. A search of Greever's person led to the evidence that was the subject of the suppression motion.

During the trial, and before Greever renewed his suppression motion, additional evidence was presented regarding the claimed violation of K.S.A. 8-1548(b). Maxfield testified that the "T" intersection was where Scott Boulevard intersects U.S. Highway 50. But for road construction, traffic could otherwise cross U.S. Highway 50 and continue south on a county road. That county road, however, was closed due to construction of a bridge south of the intersection. Thus, traffic could only turn east or west on U.S. Highway 50. There was no evidence of the presence of any signs placed at least 100 feet north of the intersection that would have warned drivers approaching the intersection from the north that they could not proceed south through the intersection.

In overruling Greever's original suppression motion, the judge observed:

"[T]he court finds it somewhat hard to believe that if I'm driving down a road and I come to a stop sign and I find out I can't go directly ahead and then I turn on my signal that I have violated the law."

In reconsidering the matter at the close of the State's evidence at trial, the judge again observed:

"The court, when it heard the evidence following the motion to suppress indicated concerns I had with the testimony of the officer. I cannot say after hearing his testimony today that I'm any less concerned about his testimony. Having probably been involved in well in excess of 100,000 traffic tickets in my career I do not recall ever seeing a ticket written or even contemplated for a car stopping at a stop sign and not signaling a turn."

In again overruling the motion, the court noted that Greever had already stopped when Maxfield approached the car. The court opined that had Maxfield stopped Greever's car rather than coming upon it when it was already stopped, the marijuana evidence would have been suppressed.

When reviewing the trial court's decision on a motion to suppress, an appellate court will uphold the trial court's factual findings if they are supported by substantial competent evidence. In doing so, we do not reweigh the evidence or substitute our view of the credibility of the witnesses. *State v. Ackward*, 281 Kan. 2, 8, 128 P.3d 382 (2006). However, we review de novo the trial court's ultimate legal conclusion. *State v. Gray*, 270 Kan. 793, 796, 18 P.3d 962 (2001).

*The Seizure*

We note that this is not a situation in which an officer stops at the side of the road to aid a motorist in distress and activates the emergency lights to warn approaching traffic of their presence, such as discussed in *United States v. Dockter*, 58 F.3d 1284, 1287 (8th Cir. 1995), and *State v. Baldonado*, 115 N.M. 106, 110, 847 P.2d 751 (1992). Maxfield did not stop to render assistance to Greever. He stopped behind Greever because of the claimed violation of K.S.A. 8-1548(b).

A seizure occurs, thereby implicating the protection of the Fourth Amendment to the United States Constitution, "when an officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen." *Terry v. Ohio*, 392 U.S. 1, 19 n.16, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

*State v. Morris*, 276 Kan. 11, 72 P.3d 570 (2003), presents remarkably similar facts, the only distinctions being the fact that *Morris* involved a nighttime search, there was no alleged traffic violation, and the odor detected was related to methamphetamine, not marijuana. In *Morris*, the police found the defendant parked in his pickup truck. The officers pulled in behind the defendant's vehicle, activated their emergency lights, and directed a spotlight at the back of the pickup. When the officers approached the vehicle they

smelled an odor associated with the production of methamphetamine. A search of the vehicle followed. Our Supreme Court held:

"We hold that Morris' encounter was not voluntary, but rather occurred under a show of authority. The officers' conduct, the activation of the emergency lights in a remote area off a roadway, was a show of authority which would communicate to a reasonable person that there was an intent to intrude upon freedom of movement. 'Few, if any, reasonable citizens, while parked, would simply drive away and assume that the police, in turning on the emergency flashers, would be communicating something other than for them to remain.' [Citation omitted]." 276 Kan. at 20.

However, a seizure requires both a show of authority and submission to that authority. The court in *Morris* continued:

"Morris did not attempt to leave when officers pulled in behind him with their emergency lights flashing. Upon seeing the flashing emergency lights of the officer's patrol car, Morris complied with the officer's 'show of authority' enjoining him to remain. He did not flee; instead, he complied with the assertion of authority. We find that Morris was seized within the contemplation of the Fourth Amendment to the United States Constitution and Section 15 of the Kansas Constitution Bill of Rights when the lights were activated and he submitted by not fleeing." 276 Kan. at 23.

Here, Maxfield's seizure of Greever occurred when Greever observed the emergency lights and submitted to Maxfield's show of authority by not fleeing. Maxfield intended to effect a traffic stop for a traffic offense. Though Greever's automobile was already stopped when Maxfield approached it, Maxfield nevertheless seized Greever. The issue then becomes whether he had reasonable suspicion to do so.

*Reasonable Suspicion*

To justify Greever's detention under the Fourth Amendment to the United States Constitution, Maxfield must have had a reasonable, articulable suspicion that Greever had committed a crime, was committing a crime, or was about to commit a crime. See *Terry*, 392 U.S. at 21. The fact that the initial stop for a traffic violation was pretextual does not invalidate the seizure if the officer has reasonable suspicion that a traffic violation has occurred. See *Whren v. United States*, 517 U.S. 806, 810, 135 L. Ed. 2d 89, 116

S. Ct. 1769 (1996); *State v. Chapman*, 23 Kan. App. 2d 999, 1004, 939 P.2d 950 (1997).

The crime Maxfield claimed Greever committed was his failure to signal his intention to turn in the manner required by K.S.A. 8-1548(b). K.S.A. 8-1548 provides, in part, as follows:

"(a) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.

"(b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

The obvious purpose of K.S.A. 8-1548 in requiring vehicle signals is to provide adequate warning to other motorists and pedestrians of a vehicle's imminent movement from one lane to another or from one direction to another in order to give them an opportunity to react accordingly. The adequacy of a warning is a function of the manner in which it is given and the time it provides others to perceive the warning and react to it. Obviously, our legislature chose a warning that can provide minimal advance notice to others on or about to enter the roadway since, for example, at a highway speed of 70 miles per hour when a motorist is traveling about 105 feet per second, a warning must be given for less than 1 second before a lane change. Given a normal driver's reaction time of 3/4 of a second, this leaves little time, indeed, for others using the roadway to respond. In the case now before us, it is clear that Greever used his turn signal to express his intention to turn, and his turn signal functioned properly. Further, from the testimony of Deputy Maxfield, it is also clear that Greever's turn signal provided probably 5 to 10 times more warning to other motorists than the required notice at highway speeds.

*State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998), does not undercut this analysis. In fact, it underscores that notice to others is the underlying basis for K.S.A. 8-1548. The defendant in *DeMarco* argued that there were no other vehicles on the roadway at the time and he was, therefore, absolved of any requirement to signal his lane change. As the court noted, the signal of a lane change is not only for the benefit of other motorists on the road

but also persons parked at the side of the road, such as the arresting officer. "The driver of a vehicle parked on the shoulder is entitled to a lane change signal to safely time reentry onto the roadway." 263 Kan. at 733. Further, *DeMarco* does not address the issue now before us: whether, considering all the surrounding circumstances, the arresting officer had reasonable suspicion that the defendant failed to express his intention to turn, once formed, in the manner required by the statute.

It was established at trial, and before Greever renewed his suppression motion, that the intersection in question was not normally a "T" intersection. It became a "T" intersection during the closure of the roadway on the opposite side of U.S. Highway 50. There was no evidence that an approaching motorist could see the closure of the roadway on the other side of the highway before reaching the intersection. While Greever testified at the suppression hearing that he intended to turn at the intersection, there remained the issue of whether one could determine from the circumstances whether he formed the intention to turn at least 100 feet back from the intersection or whether that decision was reached when he realized he would have to turn as he pulled up behind Maxfield's stopped patrol car at the intersection.

K.S.A. 8-1548 requires a signal of one's intention to turn. Under the statute, one cannot be required to signal a turn before forming the intention to do so. Thus, if a child darts out from the curb and into the path of an approaching automobile, the driver does not violate the statute by immediately reacting by swerving to avoid the child without first signaling the intent to do so.

A police officer need not be clairvoyant to make this determination. An officer is able to infer a motorist's intentions from the totality of the circumstances. In the example in which a child darts into the street, the officer can infer from the circumstances that the driver did not intend to turn until the moment the danger was perceived, not 100 feet before. In the case now before us, there is no evidence that there were any signs or warnings that a southbound motorist approaching the intersection would be required to turn either right or left. Thus, there is no evidence from which

Maxfield could infer that Greever intended to turn before coming to a stop behind him.

As stated in *State v. McCurry*, 279 Kan. 118, 121, 105 P.3d 1247 (2005): " '[J]udicial interpretation must be reasonable and sensible to effect legislative design and intent.' [Citation omitted.]" To sanction Maxfield's use of K.S.A. 8-1548 to justify Maxfield's seizure of Greever would not constitute a reasonable and sensible interpretation of the legislature's intent in enacting K.S.A. 8-1548. We agree with the admonition in *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006), cited by the dissent in this case: "A statute should not be read to add language that is not found in it or to exclude language that is found in it." Thus, we cannot ignore the element of intent clearly expressed in K.S.A. 8-1548(b).

The district court was correct in its initial reaction to Maxfield's unusual application of K.S.A. 8-1548. It was the State's burden to prove that there was reasonable suspicion to justify Greever's seizure. See *State v. Shelton*, 278 Kan. 287, 292, 93 P.3d 1200 (2004) (State bears burden of proving lawfulness of search and seizure on motion to suppress.). The State's reliance on K.S.A. 8-1548 does not meet this burden. The district court should have suppressed the evidence obtained as a result of this illegal seizure. Since Greever's convictions are predicated upon the legality of the stop, we must reverse his convictions.

Greever raises other interesting issues relating to the search of his person which we need not now address.

Reversed.

BUSER, J.: dissenting. I dissent from the majority's holding because it is predicated on an interpretation of K.S.A. 8-1548 that is at variance with our Supreme Court's opinion in *State v. DeMarco*, 263 Kan. 727, 952 P.2d 1276 (1998).

In *DeMarco*, a Kansas Highway Patrol Trooper parked on the shoulder of the road observed a vehicle make a lane change without signaling. At the time of this unsignaled lane change, there was no other traffic in the vicinity of the vehicle. Subsequent to the Trooper stopping the vehicle for violation of K.S.A. 8-1548, a large quantity of marijuana was discovered in the vehicle's trunk.

DeMarco was charged with possession of marijuana with intent to distribute. Prior to trial, he filed a motion to suppress evidence asserting that he had not violated K.S.A. 8-1548 because there was no moving traffic either in front of or behind his vehicle at the time he changed lanes.

In addressing DeMarco's contention, our Supreme Court concluded: "K.S.A. 8-1548 requires a lane change signal within 100 feet of the point where the vehicle makes the lane change, regardless of whether there is any traffic moving in front of or behind the vehicle." 263 Kan. at 733; see also *State v. Garcia*, 250 Kan. 310, 316, 827 P.2d 727 (1992) (noting district court found an unsignaled lane change as reason for the traffic stop to be facially valid); *State v. Chapman*, 23 Kan. App. 2d 999, 1004, 939 P.2d 950 (1997) (failure to signal a lane change provided Trooper with reasonable suspicion that defendant was violating a traffic ordinance).

In the present case, Deputy Sheriff Justin Maxfield personally witnessed Greever activate his turn signal less than 100 feet before the defendant turned at the intersection. The majority concedes this uncontroverted evidence: "Greever did not signal his intention to turn at the 'T' intersection until his vehicle came to a stop behind Maxfield's patrol car." Under the plain language of K.S.A. 8-1548(b), as interpreted by our Supreme Court in *DeMarco*, because Greever did not signal 100 feet prior to his turn, Deputy Maxfield had eyewitness evidence to support a "reasonable suspicion" that Greever had just committed a traffic violation. That should have ended our court's analysis regarding the propriety of the traffic stop.

Like the defendant in *DeMarco*, however, the majority presumes that "[t]he obvious purpose of K.S.A. 8-1548 is to provide adequate warning to other motorists and pedestrians of a vehicle's imminent movement . . . in order to give them an opportunity to react accordingly." My colleagues then *sua sponte* engage in some time, speed, and distance calculations, and a bit of human factors research, and suggest that Greever's failure to comply with the 100-foot requirement mandated by K.S.A. 8-1548 was not a violation because "Greever's turn signal provided probably 5 to 10 times more warning to other motorists than the required notice at high-

way speeds." If true, that is beside the point because nowhere in the language of K.S.A. 8-1548 did the legislature mandate that safe drivers who provide "probably 5 to 10 times more warning" than cars traveling 70 miles per hour are exempted from the requirement to signal at least 100 feet before they turn their vehicle.

"A statute should not be read to add language that is not found in it or to exclude language that is found in it. When a statute is plain and unambiguous, the court must give effect to the legislature's intent as expressed rather than determining what the law should or should not be. [Citation omitted.]" *State v. Bryan*, 281 Kan. 157, 159, 130 P.3d 85 (2006).

The majority then states that a law enforcement officer must possess evidence establishing a driver's intention to turn and where that intention was formulated in order to have a reasonable suspicion to stop the driver for violation of K.S.A. 8-1548. Apart from being contrary to our Supreme Court's simple, straightforward interpretation of K.S.A. 8-1548, this proposed requirement is an especially speculative endeavor, grounded in clairvoyance, and inappropriate for proof of a minor traffic infraction.

In support of their view, my colleagues emphasize that Deputy Maxfield did not prove there were advance warning signs or sufficient sight distance to alert Greever to the upcoming "T" intersection and his need to formulate an intention to turn. This testimony, however, would not have provided any inkling as to if and when Greever formulated his intention to turn. Assuming arguendo this testimony should have been determinative of a violation of K.S.A. 8-1548, however, the record reveals that Greever's testimony at the suppression hearing established these very facts.

Greever testified:

"I was coming around the curve from South Hutch approaching the intersection. I turned on my turn signal knowing that there's a car in front of me, a stop sign, I'm turning left. *I fully intended on turning left*. I turned on my turn signal. As I approached the vehicle in front of me I get a phone call from a friend." (Emphasis added.)

Greever's testimony established there was sufficient warning and sight distance for an ordinary motorist to formulate an intention to turn prior to turning and that Greever, in fact, formulated such an intention upon his approach to the intersection.

I would affirm the district court's denial of Greever's motion to suppress. See *State v. Nash*, 281 Kan. 600, 602, 133 P.3d 836 (2006) (district court correctly denied relief for the wrong reason).