No. 95,303

STATE OF KANSAS, *Appellee*, v. SHANON S. GREEVER, *Appellant*.

(184 P.3d 788)

Opinion filed May 16, 2008.

*Jennifer E. Conkling*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Thomas R. Stanton*, deputy district attorney, argued the cause, and *Keith E. Schroeder*, district attorney, and *Phill Kline*, attorney general, were with him on the brief for appellee.

The opinion of the court was delivered by

DAVIS, J.: After the denial of his pretrial motion to suppress evidence, Shanon S. Greever was convicted of possession of marijuana and possession of marijuana without drug tax stamps affixed. The Court of Appeals decided that the evidence in question should have been suppressed because the initial traffic stop was illegal, rendering the seizure a violation of the defendant's rights under the Fourth Amendment to the United States Constitution, and therefore reversed Greever's convictions. *State v. Greever*, 37 Kan. App. 2d 145, 150 P.3d 918 (2007). We granted the State's petition for review, reverse the decision of the Court of Appeals, and affirm the district court as to the issues before us.

*Facts*

On March 17, 2004, at about 2:30 p.m., Reno County Deputy Sheriff Justin Maxfield was on duty and stopped at a stop sign at the intersection of Scott Boulevard and U.S. Highway 50 in Reno County. Because of bridge construction, the Scott Boulevard-U.S. 50 intersection formed a "T," with southbound Scott Boulevard terminating at U.S. Highway 50.

Deputy Maxfield observed in his rear view mirror a white car approaching him from the rear. The driver, "a white male occupant with long hair and a hat," was talking on the cell phone as he neared the intersection. The driver displayed a turn signal only after his vehicle came to a complete stop behind Deputy Maxfield's police cruiser.

Deputy Maxfield turned east through the intersection and pulled over to the side of the road but did not activate his emergency lights or siren. He then waited for the white car and a semi-truck and trailer to pass, after which he reentered the roadway with the intent to stop the white car for failure to properly use its turn signal. However, the deputy lost sight of the car around the semi-truck, and soon he noticed that the white car was no longer in front of

the truck. When he realized this, Maxfield turned his vehicle around and located the white car parked on Bonebrake Street.

Maxfield pulled up behind the white car, exited his patrol car, and approached the driver's side of the vehicle. When the driver, Shanon Greever, noticed the officer had arrived at his window, he acknowledged that he had not properly used his turn signal, explaining that he was distracted because he was talking on his cellular phone as he approached the intersection.

Maxfield smelled the odor of marijuana wafting from the passenger compartment of Greever's vehicle. Likewise, when Greever was searching for his insurance and registration documentation, Maxfield observed an item he thought was drug paraphernalia.

Upon seeing and smelling what he believed to be drug-related activity, the deputy asked Greever to exit his vehicle and advised Greever of his *Miranda* rights from memory. Maxfield then asked Greever if he would be willing to answer some questions; Greever responded that his answer would depend on the questions asked.

Maxfield asked Greever whether he had marijuana in the car or on his person; Greever responded that he had no marijuana. Greever then asked the deputy if he could call his lawyer before Maxfield conducted a pat-down search, and Maxfield answered that he could not call his lawyer "right at that moment."

Following this conversation, Maxfield conducted a pat-down search of Greever and felt a large, bulky item in Greever's pocket. Maxfield asked Greever what the item was, and Greever told him it was "weed"—a term the deputy recognized as a slang word describing marijuana. Maxfield removed the marijuana from Greever's pocket and asked if he had any other marijuana on his person. Greever stated that he had a "quarter"—a 1/4 ounce of marijuana—in another pocket. Although Maxfield was unable to find that second amount of marijuana, he later determined it was really a portion of the bulge already seized. Greever told the deputy that he was holding the marijuana for some friends.

In addition to the marijuana seized from Greever's pocket, Maxfield observed rolling papers and marijuana roaches in Greever's car.

Following this encounter, Greever was arrested and taken to the Reno County Detention Center. On the way to the center, Greever engaged Maxfield in a lengthy discussion regarding the issue of whether marijuana should be legalized. In particular, Greever informed Maxfield that marijuana should be legalized and that he intended to tell the district court that it "should either deport him, kill him, or accept him as he was because he wasn't going to stop using marijuana."

*District Court Proceedings*

A complaint was filed in Reno County District Court charging Greever with possession of marijuana with the intent to sell and possession of marijuana without tax stamps affixed.

Prior to trial, Greever filed a motion to suppress his statements and the evidence resulting from the traffic stop. During a hearing on the motion, Deputy Maxfield testified to the events as described above. Greever also testified, claiming that he turned his turn signal on prior to approaching the intersection. The defendant denied having admitted to Maxfield his failure to use a turn signal during the initial stop. However, the defendant stated that he stopped his car voluntarily to continue his cell phone conversation and that he agreed to exit the car to speak with the deputy because "[he didn't] see any reason why [he] shouldn't." The defendant stated on cross-examination that he did not notice the lights on the deputy's patrol car until after the deputy tapped on his driver-side window.

While the district court questioned whether failure to use a turn signal would be a traffic violation if the vehicle could not proceed straight ahead, the court ultimately found that this question was moot because Greever had not been seized by the deputy. The court concluded that the odor of marijuana provided a reasonable suspicion to conduct a pat-down search. The court denied Greever's motion to suppress the evidence seized from his person and car. However, the court suppressed Greever's statements to Maxfield since Maxfield denied Greever's request to speak with an attorney.

*Court of Appeals*

Greever appealed, claiming that the district court erred in denying his motion to suppress the marijuana and other drug paraphernalia. He argued he was seized within the meaning of the Fourth Amendment and that K.S.A. 8-1548, which describes the proper use of a turn signal under Kansas law, could not provide reasonable suspicion for the stop. He also claimed that K.S.A. 8-1548(b) is void for vagueness and that the evidence should be suppressed because the pat-down search exceeded the scope of a *Terry* stop since Deputy Maxfield had no reason to fear for the officer's safety. See *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1968).

A divided panel of the Court of Appeals reversed the defendant's conviction, holding that K.S.A. 8-1548(b) did not provide Deputy Maxfield a reasonable suspicion to conduct a traffic stop in this case. 37 Kan. App. 2d at 152. The majority concluded that a seizure occurred within the meaning of the Fourth Amendment "when Greever observed the emergency lights and submitted to Maxfield's show of authority by not fleeing." 37 Kan. App. 2d at 149.

The majority opinion then turned to the question of whether Deputy Maxfield had reasonable suspicion to conduct the initial traffic stop. Examining the provisions of K.S.A. 8-1548, the majority found:

"The obvious purpose of K.S.A. 8-1548 in requiring vehicle signals is to provide adequate warning to other motorists and pedestrians of a vehicle's imminent movement from one lane to another or from one direction to another in order to give them an opportunity to react accordingly. The adequacy of a warning is a function of the manner in which it is given and the time it provides others to perceive the warning and react to it. Obviously, our legislature chose a warning that can provide minimal advance notice to others on or about to enter the roadway since, for example, at a highway speed of 70 miles per hour when a motorist is traveling about 105 feet per second, a warning must be given for less than one second before a lane change. Given a normal driver's reaction time of 3/4 of a second, this leaves little time, indeed, for others using the roadway to respond. In the case now before us, it is clear that Greever used his turn signal to express his intention to turn, and his turn signal functioned properly. Further, from the testimony of Deputy Maxfield, it is also clear that Greever's turn signal provided probably 5 to 10 times more warning to other motorists than the required notice at highway speeds." 37 Kan. App. 2d at 150.

Ultimately, the majority held that under K.S.A. 8-1548, "one cannot be required to signal a turn before forming the intention to do so." 37 Kan. App. 2d at 151. The court further concluded that "[a]n officer is able to infer a motorist's intentions from the totality of the circumstances." 37 Kan. App. 2d at 151. Finding that "there is no evidence from which Maxfield could infer that Greever intended to turn before coming to a stop behind him," the majority found that "[t]o sanction Maxfield's use of K.S.A. 8-1548 to justify Maxfield's seizure of Greever would not constitute a reasonable and sensible interpretation of the legislature's intent in enacting K.S.A. 8-1548." 37 Kan. App. 2d at 151-52.

The majority also found that this court's decision in *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998), where the court found that "[t]he driver of a vehicle parked on the shoulder is entitled to a lane change signal to safely time reentry onto the roadway," was not inconsistent with its reading of K.S.A. 8-1548. 37 Kan. App. 2d at 150-51.

Following this reasoning, the majority concluded that the State's reliance on K.S.A. 8-1548 to provide reasonable suspicion for the stop was misplaced and that the State had failed to meet its burden of proof to demonstrate the legality of the stop. The court therefore reversed Greever's convictions. 37 Kan. App. 2d at 152. Its decision rendered the remaining issues relating to the constitutionality of K.S.A. 8-1548 and the pat-down search under *Terry* moot. 37 Kan. App. 2d at 152.

Judge Buser dissented, stating that the majority's interpretation of K.S.A. 8-1548 was contrary to the plain language of the statute and at variance with this court's decision in *DeMarco*. 37 Kan. App. 2d at 152-54 (Buser, J., dissenting). Judge Buser opined:

"The majority . . . states that a law enforcement officer must possess evidence establishing a driver's intention to turn and where that intention was formulated in order to have a reasonable suspicion to stop the driver for violation of K.S.A. 8-1548. Apart from being contrary to our Supreme Court's simple, straightforward interpretation of K.S.A. 8-1548, this proposed requirement is an especially speculative endeavor, grounded in clairvoyance, and inappropriate for proof of a minor traffic infraction." 37 Kan. App. 2d at 154 (Buser, J., dissenting).

*Discussion*

Before addressing the merits of this appeal, it is necessary to identify the issues pending for resolution before us. Appellate defense counsel focused much of her oral argument on the question of whether the odor of marijuana emanating from Greever's vehicle provided Deputy Maxfield with probable cause to search the occupant and the vehicle. The argument advanced is based upon a letter pursuant to Supreme Court Rule 6.09 (2007 Kan. Ct. R. Annot. 45) submitted by the same counsel after oral argument in this case before the Court of Appeals. Counsel notes in her letter that "[d]uring oral argument . . . a question arose concerning whether a police officer can search the occupant of a vehicle if the officer has smelled marijuana in the vehicle." Counsel identified two Kansas cases, *State v. Delgado*, 36 Kan. App. 2d 653, 143 P.3d 681 (2006), *rev. denied* 283 Kan. 932 (2007), and *State v. MacDonald*, 253 Kan. 320, 856 P.2d 116 (1993), where the courts held that the smell of marijuana in a car may constitute probable cause to search the vehicle; counsel contended that these cases were wrongfully decided in that they confused probable cause with a determination of exigent circumstances.

The issue of whether the smell of marijuana emanating from a vehicle lawfully stopped for a traffic violation provides an officer with probable cause to search the occupant of that vehicle was not briefed by the parties before the Court of Appeals, was not identified as an issue by the Court of Appeals in its opinion, and was not identified by the parties as an issue to be considered upon petition for review. This question was only identified in counsel's Supreme Court Rule 6.09 letter, which is insufficient to preserve the issue for review by this court. See *State v. Layton*, 276 Kan. 777, 782-84, 80 P.3d 65 (2003) (issue not raised in briefs or in petition for review cannot be raised in a Rule 6.09 letter); *Canaan v. Bartee*, 272 Kan. 720, 739-40, 35 P.3d 841 (2001) (issue raised in Rule 6.09 letter not properly before court since it was not the basis for lower court's decision); *Resolution Trust Corp. v. Scaletty*, 257 Kan. 348, 350, 891 P.2d 1110 (1995) (cannot use a Rule 6.09 letter to raise issues additional to those contained in the certified question).

A new issue raised in a letter submitted pursuant to Supreme Court Rule 6.09 is generally not preserved for review before an appellate court. This is particularly true in this case where the issue was not briefed by the parties, was not identified or discussed in the Court of Appeals opinion, and was not identified as an issue in the petition for review before this court. As we have held on numerous occasions, an issue not briefed by the appellant is deemed waived or abandoned. See *State v. Walker*, 283 Kan. 587, 594, 153 P.3d 1257 (2007); *Lee Builders, Inc. v. Farm Bureau Mut. Ins. Co.*, 281 Kan. 844, 859, 137 P.3d 486 (2006). The only exception to this rule thus recognized by the court is that if the issue is raised on remand, it is preserved on *further* appeal. See *Puritan-Bennett Corp. v. Richter*, 235 Kan. 251, 255, 679 P.2d 206 (1984). There has been no remand in this case, and the issue has not been preserved for our consideration in the State's petition for review.

Before the Court of Appeals, Greever identified four issues: (1) that the encounter between the deputy and the defendant constituted a seizure; (2) that the traffic stop was not justified because the officer did not have reasonable suspicion; (3) that K.S.A. 8-1548 is void for vagueness; and (4) that the marijuana seized during the pat-down search was the fruit of an illegal search because a *Terry* stop is limited to the question of whether the defendant was carrying weapons.

The Court of Appeals resolved the first two issues in its decision but did not reach the constitutional question or the issue regarding the weapons requirement for a pat-down search. The first two issues—whether the encounter was a seizure and whether there was a reasonable suspicion to conduct the traffic stop—are the issues upon which this court granted the State's petition for review.

*Analysis*

The question we are called upon to resolve in this case is whether the district court's denial of Greever's motion to suppress violated the defendant's rights under the Fourth Amendment to the United States Constitution. Greever would have us conclude that there was an illegal seizure of his person under the Fourth Amendment because the initial traffic stop in this case was not supported by

reasonable suspicion that the defendant had committed a traffic violation. The district court concluded that the encounter between Deputy Maxfield and the defendant was a voluntary one (not a seizure) and therefore found that probable cause or reasonable suspicion was not required.

The Fourth Amendment to the United States Constitution provides:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

The Kansas Constitution Bill of Rights, § 15 similarly states that "[t]he right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate." This court has emphasized that these two constitutional provisions provide identical protection. See *State v. Anderson,* 281 Kan. 896, 901, 136 P.3d 406 (2006).

Deputy Maxfield acted without a search warrant. Thus, this court's review of the district court's denial of Greever's motion to suppress is two-fold: (1) Did the encounter between Deputy Maxfield and the defendant constitute a seizure within the contemplation of the Fourth Amendment? and (2) If the encounter was a seizure, was this seizure supported by the appropriate level of suspicion by the officer—probable cause or reasonable suspicion—depending on the circumstances? See *State v. Hill,* 281 Kan. 136, 141, 130 P.3d 1 (2006).

*Standard of Review*

When a defendant files a motion to suppress evidence, the State bears the burden of proof to demonstrate that a search or seizure that led to the discovery of the evidence in question was lawful. *State v. Ibarra,* 282 Kan. 530, 533, 147 P.3d 842 (2006).

"In reviewing a district court's decision regarding suppression, this court reviews the factual underpinnings of the decision by a substantial competent evidence standard and the ultimate legal conclusion by a de novo standard with independent judgment. This court does not reweigh evidence, pass on the cred-

ibility of witnesses, or resolve conflicts in the evidence. [Citation omitted.]" *State v. Ackward,* 281 Kan. 2, 8, 128 P.3d 382 (2006).

When material facts to a trial court's decision on a motion to suppress evidence are not in dispute, the question of whether evidence should be suppressed is a question of law over which an appellate court has unlimited review. *State v. Porting,* 281 Kan. 320, 324, 130 P.3d 1173 (2006).

Moreover, where a district court's grant or denial of a motion to suppress is based on its interpretation of a particular statute, as the court's decision was in this case, this court is not bound by the district court's or Court of Appeals' interpretation. Rather, "[t]he interpretation of a statute is a question of law over which this court has unlimited review." *State v. Bryan,* 281 Kan. 157, 159, 130 P.3d 85 (2006); see also *Anderson,* 281 Kan. at 901 (an appellate court reviews questions of statutory interpretation involved in its review of a motion to suppress de novo). As this court recently explained in *In re K.M.H.,* 285 Kan. 53, 79, 169 P.3d 1025 (2007):

"When we are called upon to interpret a statute, we first attempt to give effect to the intent of the legislature as expressed through the language enacted. When a statute is plain and unambiguous, we do not speculate as to the legislative intent behind it and will not read the statute to add something not readily found in it. We need not resort to statutory construction. *It is only if the statute's language or text is unclear or ambiguous that we move to the next analytical step, applying canons of construction or relying on legislative history construing the statute to effect the legislature's intent.* [Citation omitted.]" (Emphasis added.)

For this reason, this court has emphasized that when interpreting statutes, "[o]rdinary words are given their ordinary meanings. A statute should not be read to add language that is not found in it or to exclude language that is found in it." *Bryan,* 281 Kan. at 159.

Even when a court determines that statutory language is ambiguous and thus it must resort to maxims of construction, "[t]he fundamental rule of statutory construction is that the intent of the legislature governs if that intent can be ascertained." *Winnebago Tribe of Nebraska v. Kline,* 283 Kan. 64, 77, 150 P.3d 892 (2007). Nevertheless, "[w]hen a statute is plain and unambiguous, the court must give effect to the intention of the legislature as ex-

pressed, rather than determine what the law should or should not be. [Citation omitted.]" 283 Kan. at 77.

*(1) Seizure or Voluntary Encounter*

The Fourth Amendment's guarantee against unreasonable seizures relates not only to a person's rights upon arrest, but also to "whenever a police officer accosts an individual and restrains his freedom to walk away." *Terry*, 392 U.S. at 16. "[W]hen the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen," a " 'seizure' has occurred" implicating constitutional protection. 392 U.S. at 19 n.16. We have previously held that a traffic stop implicates the Fourth Amendment protection against illegal seizures in that it involves at a minimum an investigatory detention or *Terry* stop. See K.S.A. 22-2402(1); *Anderson*, 281 Kan. at 901-02. Under K.S.A. 22-2402(1), a law enforcement officer may stop any person in a public place based upon specific and articulable facts raising a reasonable suspicion that such person is committing, has committed, or is about to commit a crime.

The district court in this case found, and the State argues in its petition for review, that because Greever's car was already stopped on Bonebrake Street when Maxfield pulled up behind him in his patrol car and because the defendant cooperated with the deputy's request for license and registration and to exit the vehicle, the interaction between the deputy and Greever was a "voluntary encounter" and thus not a seizure under the Fourth Amendment. However, contrary to the State's argument, the fact that Greever's car was already stopped on the side of the road does not automatically cause this court to conclude that the encounter between Maxfield and Greever was consensual. Rather, because there was an encounter between the deputy and Greever, this court must still determine whether that encounter was voluntary or amounted to an investigatory detention—that is, whether Maxfield made a show of authority to which Greever submitted. See *State v. Morris*, 276 Kan. 11, 23, 72 P.3d 570 (2003). Because the material facts in this case are not in dispute, we review the question of whether the

encounter constitutes a seizure under the Fourth Amendment de novo. See *Porting*, 281 Kan. at 324.

In this case, Deputy Maxfield parked his patrol car behind Greever's car, activated the emergency lights on the patrol car, exited the vehicle, and approached Greever's driver-side window. Upon arriving at Greever's vehicle, Maxfield tapped on the window; according to the defendant's testimony, the defendant noticed the lights flashing behind him when he heard the tap and rolled down his window to speak with the sheriff's deputy.

In *Morris*, we recently held that the activation of emergency lights was a sufficient show of authority to communicate to a citizen that he or she is not free to leave the scene. 276 Kan. at 20. Moreover, as in *Morris*, Greever submitted to this show of authority by remaining at the scene, rolling down his window, and complying with the deputy's request. See 276 Kan. at 20, 23.

While there is some evidence to support the district court's conclusion that the encounter between the defendant and Deputy Maxfield was voluntary, we believe the evidence as a whole supports a contrary conclusion. Therefore, we conclude that the district court erred when it found that the encounter between Deputy Maxfield and Greever was a voluntary encounter and not a seizure under the Fourth Amendment. However, "[i]f a trial court reaches the right result, its decision will be upheld even though the trial court relied upon the wrong ground or assigned erroneous reasons for its decision." *Rose v. Via Christi Health System, Inc.*, 279 Kan. 523, 525, 113 P.3d 241 (2005); see *State v. Nash*, 281 Kan. 600, 602, 133 P.3d 836 (2006). Thus, we must determine whether the deputy had a reasonable suspicion to conduct the investigatory detention in this case.

*(2) Probable Cause or Reasonable Suspicion to Initiate the Traffic Stop*

Because Deputy Maxfield's initial encounter with Greever constituted a seizure within the meaning of the Fourth Amendment, the law requires that the State demonstrate that the deputy had— at a minimum—a reasonable, articulable suspicion at the time of

the encounter that Greever had committed a traffic violation. See *Anderson*, 281 Kan. at 901.

In *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1990), this court held that when an officer observes a driver violate K.S.A. 8-1548—the turn signal statute at issue in this case—the officer has probable cause to make a traffic stop. Applying this rationale to the facts before the court, if Deputy Maxfield observed Greever violate K.S.A. 8-1548, then the deputy had probable cause—a higher standard than reasonable suspicion—to seize the defendant for purposes of investigating that violation. See *State v. Damm*, 246 Kan. 220, 224, 787 P.2d 1185 (1990) ("The scope and duration of a seizure must be strictly tied to and justified by the circumstances which rendered its initiation proper.").

K.S.A. 8-1548 provides in relevant part:

"(a) No person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal in the manner hereinafter provided.

"(b) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning."

This court briefly discussed K.S.A. 8-1548 in *DeMarco*. There, a highway patrol trooper was stopped on the shoulder of Interstate 70 and observed the defendant's car change lanes on the highway without using a turn signal. The officer pulled onto the highway and stopped the defendant's car in order to give them a warning for the violation. After stopping the car, asking for license and registration, and conducting a background check, the trooper eventually discovered 190 pounds of marijuana in the defendant's trunk. Criminal proceedings ensued, and the defendant moved to suppress the marijuana, arguing it was seized in violation of his Fourth Amendment rights.

This court held that the initial traffic stop was a lawful seizure because the defendant had failed to activate his turn signal when switching lanes—a violation of K.S.A. 8-1548(b). 263 Kan. at 733. The court further explained this outcome was not dependent on whether any other vehicles were in the vicinity: "K.S.A. 8-1548 requires a lane change signal within 100 feet of the point where

the vehicle makes the lane change, regardless of whether there is any traffic moving in front of or behind the vehicle." 263 Kan. at 733.

The plain language of K.S.A. 8-1548 provides that anyone turning a vehicle must provide "an appropriate signal"—namely, a turn signal given continuously for at least 100 feet before the turn. The statute does not provide any exception to this rule, nor does it indicate that a person must possess a particular criminal intent in order to be found guilty of the infraction described.

This court has previously held that when a statute makes a particular behavior unlawful without including any requirement of criminal intent or exception to its application, a violation of that statute is an absolute liability offense. See *State v. Merrifield*, 180 Kan. 267, 269, 303 P.2d 155 (1956). K.S.A. 21-3204(1) similarly provides that "[a] person may be guilty of an offense without having criminal intent if the crime is . . . [a] misdemeanor, cigarette or tobacco infraction or traffic infraction and the statute defining the offense clearly indicates a legislative purpose to impose absolute liability for the conduct described." Furthermore, "[a]n absolute liability offense, unlike most other crimes, does not require any criminal intent. The only proof required to convict an individual of an absolute liability offense is that the individual engaged in the prohibited conduct." *Hopper*, 260 Kan. at 70.

Neither party in this case argued that a violation of K.S.A. 8-1548 is an absolute liability offense. Nevertheless, this court explained in *Hopper* that when "[i]nterpretation of [a particular statutory provision] . . . include[s] determination of the necessary elements to establish the infraction[,] . . . [t]he absolute liability issue arises inherently from our responsibility to interpret [the statute]." 260 Kan. at 71. Here, the fact that a violation of K.S.A. 8-1548 is an absolute liability offense is inherent in the plain language of the statute.

In *Hopper*, this court concluded that K.S.A. 8-1514(a), which requires that all vehicles be driven on the right half of the roadway, was an absolute liability offense. 260 Kan. at 71. In that case, a police officer stopped the defendant after he had crossed the cen-

ter line. The defendant claimed that he had crossed the line in order to avoid a patch of ice in the roadway.

The Kansas Supreme Court first noted that although K.S.A. 8-1514(a) contained four explicit exceptions for times when a vehicle could cross the center line of a roadway, the rationale presented by the defendant—an exception for " 'road or weather conditions' "—was not one of the exceptions enumerated. 260 Kan. at 70, 72. Because the defendant crossed the center line of the highway for a reason other than those included in the statute, the court held that the police officer had a reasonable, articulable suspicion to conduct the traffic stop. 260 Kan. at 67, 73; see also *Merrifield,* 180 Kan. at 269 (statute prohibiting driving with a canceled, suspended, or revoked driver's license is an absolute liability offense in that it involves no intent element).

Rather than limiting its interpretation of K.S.A. 8-1548 to the plain language of the statute, the Court of Appeals when considering the instant case determined—without citation—that "[t]he obvious purpose of K.S.A. 8-1548 in requiring vehicle signals is to provide adequate warning to other motorists and pedestrians of a vehicle's imminent movement from one lane to another or from one direction to another in order to give them an opportunity to react accordingly." *Greever,* 37 Kan. App. 2d at 150. In addition, the court found that under K.S.A. 8-1548, "one cannot be required to signal a turn before forming the intention to do so." 37 Kan. App. 2d at 151. As a result of this reasoning, the Court of Appeals read into the statute an implied exception that a driver does not violate K.S.A. 8-1548, even if he or she activates a turn signal well within 100 feet of making a turn, as long as the signal gives reasonable notice to others "to perceive the warning and react to it." 37 Kan. App. 2d at 150.

As Judge Buser articulated in his dissent, the "interpretation" of K.S.A. 8-1548 by the Court of Appeals majority in this case is contrary to the plain language of the statute and adds ambiguity where none exists in the legislature's enactment. See *Greever,* 37 Kan. App. 2d at 154 (Buser, J., dissenting). K.S.A. 8-1548 clearly states that "[n]o person shall turn a vehicle . . . without giving an appropriate signal," *i.e.,* a turn signal "given continuously during not

less than the last one hundred (100) feet traveled by the vehicle before turning."

The reasoning of the Court of Appeals majority opinion seems to be that the driver in this case substantially complied with the provisions of K.S.A. 8-1548 because the "turn signal provided probably 5 to 10 times more warning to other motorists than the required notice at highway speeds." 37 Kan. App. 2d at 150. However, the principle of substantial compliance does not apply when the traffic infraction is an absolute liability offense. See *Hopper*, 260 Kan. at 70, 72. It is clear from the evidence that Greever failed to give the warning proscribed by K.S.A. 8-1548.

As a final note, it may well be that the stopping of Greever's automobile was pretextual in nature. Nevertheless, the United States Supreme Court has explained that when an officer can articulate facts demonstrating that the officer had probable cause to suspect that the accused has committed a crime (in this case, a traffic violation), the seizure is valid *even though it may be pretextual. Whren v. United States*, 517 U.S. 806, 813, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996). Thus, when probable cause exists to conduct a traffic stop, a court will not invalidate that stop on the basis of the officer's motives. *DeMarco*, 263 Kan. at 733.

The Court made it clear in *Whren* that the motivation of an officer in initiating a stop was not to play a part in the determination of whether that stop was supported by probable cause. Categorically stating its "unwilling[ness] to entertain Fourth Amendment challenges based on the actual motivations of individual officers," *Whren* held unanimously that "[s]ubjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." 517 U.S. at 813. "[I]ndeed, *Whren* itself relied on *United States v. Robinson*, 414 U.S. 218[, 38 L. Ed. 2d 427, 94 S. Ct. 467] (1973), for the proposition that 'a traffic-violation arrest . . . [will] not be rendered invalid by the fact that it was "a mere pretext for a narcotics search." ' 517 U.S., at 812-813." *Arkansas v. Sullivan*, 532 U.S. 769, 772, 149 L. Ed. 2d 994, 121 S. Ct. 1876 (2001).

The question in this case is whether, at the time of the stop, Deputy Maxfield had probable cause to believe that the defendant was committing a traffic offense and whether the law authorized a

stop for such an offense. Without putting the deputy in a position of interpreting the law as written and recognizing the plain language of the statutory provision, it is clear that the defendant did not signal 100 feet before making his turn. Deputy Maxfield testified that he believed that the defendant was committing a traffic offense, and under Kansas law, Deputy Maxfield was authorized to stop the defendant for such an offense even though that stop may have been pretextual. As a reviewing court, our inquiry therefore begins and ends with a determination as to whether there was probable cause that a traffic violation had taken place. See *State v. Anderson*, 281 Kan. 896, 901, 136 P.3d 406 (2006).

The record in this case demonstrates that Deputy Maxfield observed Greever's vehicle approach the deputy from the rear and that Greever did not activate his turn signal until he was stopped behind the patrol car. In other words, Maxfield observed Greever violate K.S.A. 8-1548. As such, Maxfield had probable cause to stop Greever for that violation. See *DeMarco*, 263 Kan. at 733.

Because Deputy Maxfield had probable cause and reasonable suspicion to stop Greever for a violation of K.S.A. 8-1548, the deputy's initial seizure of Greever on Bonebrake Street did not violate Greever's Fourth Amendment rights.

In Greever's appeal from his convictions, he raised two additional arguments before the Court of Appeals—that K.S.A. 8-1548(b) is void for vagueness and that the evidence should be suppressed because the pat-down search exceeded the scope of the stop since Deputy Maxfield had no reason to fear for the officer's safety. These issues were not addressed by the Court of Appeals and were not included in the State's petition for review. We therefore reverse the Court of Appeals and remand to the Court of Appeals for consideration of these remaining issues.

The decision of the Court of Appeals is reversed, and the district court's denial of the motion to suppress based on the legality of the initial traffic stop is affirmed. The case is remanded to the Court of Appeals for consideration of the two remaining issues raised and not resolved in Greever's original appeal.

JOHNSON, J., dissenting: The majority presents a straightforward, technical application of the law to the facts of this case. I feel

compelled to dissent because I am concerned about expanding the circumstances under which law enforcement officers are legally permitted to engage in profiling to select targets of investigatory detentions.

I acknowledge that our United States Supreme Court, in *Whren v. United States*, 517 U.S. 806, 135 L. Ed. 2d 89, 116 S. Ct. 1769 (1996), specifically and explicitly took an officer's subjective motives out of the equation when analyzing whether a traffic infraction has supported a vehicle stop. In my view, that holding permits an officer to select any particular profile—Hispanics, teenagers, soccer moms, long-haired men, etc.—and target those individuals for seizure to investigate any crime perceived to be prevalent among the particular group, so long as the officer can identify a preceding traffic infraction, no matter how innocuous or esoteric the violation. At the very least, then, we should require that the officer's belief in the existence of the pretextual traffic infraction be *objectively* reasonable under the totality of the circumstances. See *State v. Hamic*, 35 Kan. App. 2d 202, Syl. ¶ 4, 129 P.3d 114 (2006) (detaining officer's subjective reasons for stopping a moving vehicle which do not pass the objective, reasonably-cautious-person test must be excluded or discounted in the totality of circumstances analysis).

To find that Deputy Maxfield had probable cause that Greever was violating K.S.A. 8-1548(b), the majority relies heavily upon its declaration, *sua sponte*, that the statute creates a strict liability offense. The majority supports its strict liability conclusion by citing heavily from the 52-year-old case of *State v. Merrifield*, 180 Kan. 267, 303 P.2d 155 (1956), and by reciting the provisions of K.S.A. 21-3204(1).

Interestingly, in a more recent case, our Supreme Court noted that "K.S.A. 21-3204 came into being with the adoption of the Kansas Criminal Code" in 1969; that the criminal code was based almost entirely on recommendations of the Kansas Judicial Council; and that those Judicial Council recommendations included a comment that " '[K.S.A. 21-3204] represents an effort to *limit strict liability crimes* to those situations where the penalty is relatively mild and *where the legislature has **clearly** indicated an intention*

*to dispense with criminal intent.'* " (Emphasis added.) *State v. Lewis*, 263 Kan. 843, 857, 953 P.2d 1016 (1998) (quoting Kansas Jud. Council Bulletin, pp. 32-33 [April 1968]). Given that the 1969 criminal code endeavored to place a limit on the crimes which were to be considered strict liability offenses, I question the efficacy of the prior, 1956 holdings in *Merrifield*. Rather, the Judicial Council comments suggest that we will know when we see either a misdemeanor or a traffic infraction that is a strict liability crime because the legislature will clearly indicate to us that it intended to dispense with a criminal intent requirement. I do not read that clear intent in the language of K.S.A. 8-1548.

Perhaps more disturbing is that the majority's inflexible interpretation of the statute has the potential of placing a person in a circumstance where a violation cannot be avoided, even if the driver knows the law and wishes to comply. For instance, in the *State v. DeMarco*, 263 Kan. 727, 952 P.2d 1276 (1998), scenario described by the majority, the trooper was stopped on the shoulder of Interstate 70 and, after observing the defendant's vehicle change lanes without signaling, the trooper pulled his patrol car onto the highway to stop the defendant's vehicle. One wonders whether the trooper complied with K.S.A. 8-1548 by signaling his intention to turn onto the highway for "not less than the last one hundred (100) feet traveled by the [patrol car] before [pulling onto the highway]." Perhaps the trooper could drive down the shoulder for 100 feet with the turn signal activated, but if a bridge or other obstruction interrupts the shoulder within 100 feet of the parking spot, compliance with the 100 feet rule would be physically impossible. More to the point, where a person discovers, within 100 feet of an intersection, that the road ahead is temporarily closed, then, under the majority's strict liability, that person cannot avoid breaking the law.

" '[W]e assume that [a person] is free to steer between lawful and unlawful conduct.' " *State v. Watson*, 273 Kan. 426, 430, 44 P.3d 357 (2002) (quoting *Grayned v. City of Rockford*, 408 U.S. 104, 108, 33 L. Ed. 2d 222, 92 S. Ct. 2294 [1972]). Prosecuting a person for a traffic infraction when that person had no opportunity to comply with the particular rule of the road is at least offensive to one's concept of fair play and at most a due process violation.

Granted, we cannot expect law enforcement officers in the field to make a determination of whether a particular statute would be unconstitutional as applied to a particular driver. However, we can expect an officer to be aware of the totality of the circumstances and recognize when a driver has been placed in a situation that precludes strict compliance with the 100 feet required by K.S.A. 8-1548(b). In that situation, I submit that a reasonably cautious law enforcement officer would not have probable cause to believe that the driver was committing a crime so as to justify stopping the vehicle containing "a white male occupant with long hair and a hat."

Finally, I am confused by the majority's determination that remand is necessary to consider whether K.S.A. 8-1548(b) is facially void for vagueness. I understand the majority to say that Deputy Maxfield was not required to interpret the law, but rather that he could rely on the statute as written when determining whether there was probable cause that a crime was being committed. Logically, then, a subsequent invalidation of K.S.A. 8-1548(b) would not change the majority's holding that the deputy had the requisite probable cause when he made the vehicle stop, *i.e.*, when the deputy could rely on the presumption that the statute was facially valid. The subsequently declared unconstitutionality of K.S.A. 8-1548(b) would require a reversal of a conviction under that statute for improperly signaling a turn. However, it would not alter the objective reasonableness of the officer's actions at the time, so as to retroactively defeat the lawfulness of the vehicle stop. Thus, any decision the Court of Appeals may make on the facial validity of the statute will not affect the drug convictions.

ROSEN, J., joins in the foregoing dissenting opinion.