NOT DESIGNATED FOR PUBLICATION

No. 121,245

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

SUZANNE IRENE SMITH,
*Appellant*.


MEMORANDUM OPINION

Appeal from Sedgwick District Court; SETH L. RUNDLE, judge. Opinion filed July 31, 2020.
Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Matt J. Maloney*, assistant district attorney, Marc Bennett, district attorney, and *Derek Schmidt*,
attorney general, for appellee.


Before ARNOLD-BURGER, C.J., STANDRIDGE and POWELL, JJ.


PER CURIAM:  Suzanne Irene Smith appeals her convictions stemming from a traffic stop during which police officers discovered methamphetamine on her person and marijuana and drug paraphernalia in her vehicle. She argues the district court should have suppressed this evidence because the officer who initiated the traffic stop did not have reasonable suspicion of a traffic violation. Similarly, Smith argues the State did not prove by sufficient evidence that she failed to signal when turning. After reviewing these claims, we affirm.

FACTUAL AND PROCEDURAL HISTORY

Wichita police officer Kevin Dykstra observed Smith engage in what he believed to be a hand-to-hand drug exchange in the driveway of a house being monitored as the subject of a narcotics complaint. After Smith got in her car to leave, Dykstra began following her. He ultimately initiated a traffic stop when—according to him—she failed to signal before moving into a turn lane. She eventually activated the turn signal about 20-30 feet before the intersection.

Upon pulling her over, Smith failed to produce a driver's license or any proof of insurance. Dykstra asked her to exit the vehicle, told her she was being detained, and radioed for backup and a drug dog to assist with the stop. Once backup officers arrived, Smith said, "'Oh, your friends are here,'" and pointed toward the officers behind him. Rather than turn to look, Dykstra continued observing Smith, who began moving her hand toward the front pocket of her jumper. Dykstra told her not to reach for her pocket and stepped closer. He could see a small baggie with a white crystal substance inside Smith's pocket. Dykstra seized the baggie, placed Smith under arrest, and began searching her car, ultimately discovering marijuana and drug paraphernalia inside.

Smith later moved to suppress "any and all evidence obtained as a result of a warrantless search of her vehicle and person" during the traffic stop. Smith argued that Dykstra had no valid basis for the traffic stop because the officer's body camera video does not corroborate the alleged violation and her turn signal was already activated when visible on the video. She also argued the officer's preliminary hearing testimony showed he intended to pull her over before observing the alleged traffic violation and he impermissibly prolonged the traffic stop to "engage[] in a fishing expedition of a former known associate of a drug dealer." As a result, Smith contended the warrantless search of her person and vehicle were per se unreasonable.

The district court held a hearing on Smith's motion at which both Dykstra and Smith testified. A copy of the body camera video was presented as evidence. Dykstra testified that he had been employed by the Wichita Police Department for 13 years in July 2017. At that time, Dykstra was a member of the Special Community Actions Team (SCAT) tasked with investigating street level narcotics complaints and violent crimes reported by community members. He received injury training, case law training, and narcotics identification training and had to complete 40 hours per year as part of the SCAT certification requirements. Dykstra had been involved in "hundreds" of cases as of July 2017.

Dykstra explained that he had been checking a narcotics complaint at a house on Tracy Street in west Wichita on July 14, 2017. Previously, he had made "[a]pproximately 10 to 15" stops from vehicles leaving that residence and arrested individuals for narcotics possession and paraphernalia possession. That day, Dykstra was driving south on Tracy in his marked patrol car when he saw a vehicle backed into the driveway with two women standing outside the open driver's side door. The women engaged in a hand-to-hand exchange, but Dykstra could not see what was exchanged. Dykstra decided to drive around the block to try to set up a surveillance in case the vehicle left. By the time he had gotten back to the intersection of Second and Tracy—just north of the residence—the vehicle was already leaving and beginning to drive toward his car. Dykstra testified he intended to conduct a drug investigation when he saw the vehicle at the residence but he would not have had any reason to pull the vehicle over without a traffic infraction.

Dykstra drove east on Second, momentarily losing sight of the vehicle, and conducted a U-turn at Nevada and Second to position himself facing south. He saw the vehicle turn on Tracy and Second, then it began travelling eastbound directly toward him. As the vehicle passed Dykstra's patrol car, he noticed the driver was one of the same females he saw standing outside the vehicle parked at the residence on Tracy. The woman looked at Dykstra as she passed and kept looking as she drove past him. Dykstra

3

waited until she had gotten some distance away, then began following her. As they approached the intersection at Second and West, Dykstra observed the woman move into the left turn lane without signaling and then activate her signal about 30 feet before the intersection. Dykstra estimated the left turn lane was "[m]aybe 50 feet" long. Dykstra believed he activated his body camera upon observing the improper signal violation based on his review of the video but could not recall the specific time. The woman pulled over after proceeding through the intersection.

Dykstra then addressed what occurred after pulling Smith's car over. After Smith could not locate a driver's license, she gave her name and Dykstra realized he had prior contact with her. He asked Smith to step out of the vehicle to get out of traffic and to "just do a little more of an investigation of where she was coming from." Smith's nervousness coupled with the residence she was leaving, the hand-to-hand exchange, and Dykstra's prior contacts made him want to learn more about what was going on.

Dykstra said he took Smith over to the easement next to the rear passenger door. While doing so, he requested a canine unit and backup officers to assist with the stop. While waiting, he continued to ask for her information and allowed her to look in the glove compartment for proof of insurance. Dykstra did not conduct a records check because he needed backup officers there so he could allow Smith to remain near her child while he performed the records check.

Dykstra explained that he eventually informed Smith he had called for a canine unit about twelve minutes into the stop, which made her frantic. These comments made Dykstra more suspicious, so he asked her to step back out of the vehicle, which she eventually did. Dykstra could hear on his radio that backup officers were arriving on scene, prompting Smith to say his "'friends are here.'" Dykstra noticed Smith's left hand started going into the pocket of her jumper, so he told her to stop reaching or keep her hands out of her pockets. He then moved closer and looked into the pocket, which was

4

loose enough that he could see a Ziplock baggie containing a crystal substance. Based on his training and experience, Dykstra believed the substance was methamphetamine, so he began placing her in handcuffs. After Dykstra retrieved the baggie, a female officer conducted a full search but discovered nothing else on Smith's person. Dykstra then searched Smith's vehicle and seized several items found inside her purse, including marijuana and drug paraphernalia.

Smith also testified at the hearing, mainly about her prior interactions with Dykstra. She recalled at least six previous interactions with Dykstra, including the four mentioned during his testimony. According to Smith, Dykstra had pulled her over multiple times for similar traffic infractions and ultimately searched her vehicle but discovered nothing. Yet on cross-examination, Smith also admitted she had been pulled over many other times for traffic infractions by other officers.

After the close of evidence and hearing arguments from counsel, the district court took the matter under advisement so it could view Dykstra's body camera video. A couple of weeks later, the court denied the motion to suppress in a motion minutes sheet, explaining:

> "After review of the video & other evidence the court finds: The stop was based upon a traffic violation observed by the officer. The officer upon the stop initiated a K-9 unit in route based upon his reasonable suspicion the [defendant] was involved in a drug transaction. His suspicion was based on: a possible hand to hand transaction at a known drug house, leaving a drug house & behavior after the stop."

Smith later agreed to waive her right to a jury trial and the case proceeded to a bench trial on stipulated facts. The stipulation of facts provided:

> "THEREUPON, the parties submit the following stipulated facts, along with the testimony at the preliminary hearing on September 13, 2018, and the motion to suppress

5

on December 14, 2018, for the Court's consideration:

"1.    On July 14, 2017, Officer Kevin Dykstra stopped a green Saturn Ion at 300 N. West Street, Wichita, Sedgwick County, Kansas, for failing to signal a turn within 100 feet of the intersection of 2nd Street North and West Street, Wichita, Sedgwick County, Kansas. Officer Dykstra observed the vehicle activate its turn signal for a left-hand turn after the vehicle was already in the turn lane to make the turn, which was less than 100 feet from the intersection.

"2.    The driver of the Saturn Ion identified herself as the defendant, Suzanne Smith.

"3.    The defendant was unable to provide Officer Dykstra with a current driver's license or current proof of insurance for the vehicle.

"4.    Office[r] Dykstra asked the defendant to step out of the vehicle. During his contact with her, Officer Dykstra observed the defendant reach into the left pocket of her jumper. Officer Dykstra could see into the jumper and observed a baggie containing a crystal-like substance. That baggie was collected as evidence.

"5.    Officer Dykstra searched the green Saturn Ion and located a baggie containing a green botanical substance as well as two pipes and a grinder with residue. Officer Dykstra believed, based upon his training and experience, that the pipes were consistent with drug paraphernalia. The green botanical substance and the residue from the grinder were collected as evidence.

"6.    The above-listed events all took place on July 14, 2017, in Wichita, Sedgwick County, Kansas.

"7.    Lana Goodson, a forensic scientist with the Sedgwick County Regional Forensic Science Center, later tested the crystal-like substance and determined it to be methamphetamine. She also tested the green botanical substance and the residue and determined that the green botanical substance was marijuana and the residue was tetrahydrocannabinol."

After reviewing the stipulated facts, the district court found the State had met its burden of proof and found Smith guilty of each charged offense. Ultimately the court sentenced Smith to a controlling sentence of 11 months' imprisonment but placed her on 12 months' probation. The court also imposed a $10 fine on the conviction for failing to signal when turning.

Smith timely appealed.

ANALYSIS

*There was sufficient evidence to prove beyond a reasonable doubt that Smith failed to signal a turn.*

Smith appeals her conviction for failing to signal a turn, making two arguments: (1) that the State only presented evidence to establish her failure to signal before reaching the intersection; and (2) the evidence established she did signal "within 100 feet" before turning. The State charged Smith in language mirroring the language of K.S.A. 8-1548.

> "[O]n or about the 14th day of July, 2017 A.D., in the County of Sedgwick, and State of Kansas, one SUZANNE I SMITH did then and there unlawfully while driving a motor vehicle on a highway, make a turn from said highway without giving a signal of such driver's intention to turn, within 100 feet before turning."

*We review the evidence in the light most favorable to the State.*

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence,

7

resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

To the extent resolving Smith's claims involves statutory interpretation, that presents a question of law subject to unlimited review. *State v. Alvarez*, 309 Kan. 203, 205, 432 P.3d 1015 (2019).

*Kansas law requires a person to signal a turn not less than 100 feet before turning.*

Under Kansas law, "[n]o person shall turn a vehicle or move right or left upon a roadway unless and until such movement can be made with reasonable safety, nor without giving an appropriate signal." K.S.A. 8-1548(a). That signal "shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning." K.S.A. 8-1548(b). The Kansas Supreme Court has held that the failure to signal a turn is an absolute liability offense with no exceptions, meaning a motorist can violate the statute without intending to commit a violation. *State v. Greever*, 286 Kan. 124, 138, 183 P.3d 788 (2008).

Smith first asserts the evidence does not support a conviction for failing to signal because the evidence presented at trial established only that she failed to signal a turn within 100 feet of the intersection. In essence, she contends the State failed to prove the violation because the statute uses the term "'before turning'" instead of "'prior to the intersection.'" So, she contends it is possible her vehicle traveled at least 70 more feet after entering the intersection before beginning the actual turn. This argument is unpersuasive for a few reasons.

First, there is a fundamental problem with Smith's sufficiency challenge, in that she ignores some key facts preceding the traffic stop. At the bench trial, the parties

8

stipulated that the court could consider the stipulated facts, along with the preliminary hearing testimony and the testimony at the motion to suppress hearing. The stipulated facts, provided that "Dykstra observed the vehicle activate its turn signal for a left-hand turn a*fter the vehicle was already in the turn lane* to make the turn, which was less than 100 feet from the intersection." (Emphasis added.) A criminal defendant who stipulates as to evidence is bound by such a stipulation and waives his or her right to contest the factual evidence included therein. *State v. Bogguess*, 293 Kan. 743, 745, 268 P.3d 481 (2012).

But that written stipulation was not the only evidence presented to the judge to review. When all the evidence to which the parties stipulated is considered, additional facts come to light. Dykstra testified at the preliminary hearing that he observed Smith move into the left turn lane without signaling and then activated her turn signal about 20 or 30 feet before the intersection. He also testified at the suppression hearing that the turn lane was about 50 feet long. Finally, the in-car video of the stop was introduced at the suppression hearing and considered by the district judge. It shows Smith stopped at a red light, in the left turn lane, at the intersection. She proceeds to turn when the light turns green and immediately begins her turn—with no discernable delay or distance travelled. The distinction Smith tries to make between signaling her movement within 100 feet of the intersection and 100 feet of the turn is a distinction without a difference when the in-car video is examined.

While there might be an instance where a vehicle must travel up to 100 feet into an intersection before beginning to turn, the facts here do not present such a situation. Simply put, nothing exists in the record to support Smith's suggestion that her vehicle traveled for 100 feet with an active turn signal before making a turn. Viewing the evidence in a light most favorable to the State, a rational factfinder could have found her guilty of an improper signal violation.

9

*Kansas courts use the terms "within" and "at least" interchangeably when discussing the turn signal statute.*

Smith's second argument attacks a different aspect of the language used in the complaint, specifically that failing to signal "within" 100 feet before turning as alleged is different from failing to signal "at least" 100 feet before turning as required by K.S.A. 8-1548. She contends the evidence showed she *did* signal a turn "within" 100 feet because Dykstra testified that she activated her signal 30 feet before the turn. Smith is not entitled to relief on this point.

As the State points out, Smith cites no authority to support her argument. Moreover, the Kansas Supreme Court uses these terms interchangeably when discussing the signal requirement statute. First in *State v. DeMarco*, 263 Kan. 727, 733, 952 P.2d 1276 (1998), our court explained "K.S.A. 8-1548 requires a lane change signal *within* 100 feet of the point where the vehicle makes the lane change, regardless of whether there is any traffic moving in front of or behind the vehicle." (Emphasis added.) Ten years later in *Greever*, the court quoted that same language without expressing any disapproval, just before saying, "[t]he plain language of K.S.A. 8-1548 provides that anyone turning a vehicle must provide 'an appropriate signal'—namely, a turn signal given continuously *for at least* 100 feet before the turn." (Emphasis added.) 286 Kan. at 137. "This court is duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position." *Ponds v. State*, 56 Kan. App. 2d 743, 753-54, 437 P.3d 85 (2019).

Even so, Smith's argument is not persuasive because basic logic dictates that using "within" in this context means the same thing as "at least." For instance, the failure to signal statute states the signal must be given "*continuously during not less than the last one hundred (100) feet* traveled by the vehicle before turning." (Emphasis added.) K.S.A.

10

8-1548(b). The State's complaint then charged Smith with violating this statute, alleging that she failed to signal "within 100 feet before turning."

In sum, Smith provides no persuasive arguments that her conviction for failing to signal a turn should be set aside. The agreed-upon stipulated facts provided that Dykstra observed Smith move her vehicle into a left-turn lane without signaling, then activate her turn signal about 30 feet before the intersection. Dykstra's body camera video also shows Smith began turning just as she enters the intersection. Finally, the Kansas Supreme Court uses the terms "within 100 feet" and "at least 100 feet" interchangeably when discussing the statute for failure to signal before turning, and those terms essentially mean the same thing in that context. A rational factfinder could have found Smith guilty of a traffic infraction for failing to signal a turn based on the facts presented in this case.

*The district court did not err by denying Smith's motion to suppress.*

Smith also argues the district court should have suppressed evidence discovered as a result of the traffic stop. She argues that the court erroneously relied on Dykstra's testimony that he observed a traffic violation. As above, Smith contends first that Dykstra's testimony only spoke to the distance her signal was activated "prior to the intersection" versus the distance "before turning." Second, she contends the length of the turn lane made it impossible for her to signal at least 100 feet before turning. The State responds by arguing the court did not err because Dykstra had reasonable suspicion that Smith had committed a traffic violation based on his testimony.

*Smith only challenges the basis for the stop.*

To start, the State correctly notes that Smith has abandoned most of the claims originally made in her suppression motion. Although she had challenged all the events during the traffic stop—i.e., that Dykstra impermissibly extended the stop to conduct a

11

drug investigation and then conducted warrantless searches of her person and vehicle—her brief only discusses Dykstra's basis for initiating the traffic stop. Thus, the only question before this court is whether Dykstra had a reasonable basis to initiate a traffic stop and the remaining claims made in the motion to suppress are therefore abandoned. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018).

*When the facts are not in dispute our review is unlimited.*

When the material facts supporting a district court's decision on a motion to suppress evidence are not in dispute, the ultimate question of whether to suppress is a question of law over which an appellate court has unlimited review. *State v. Hanke*, 307 Kan. 823, 827, 415 P.3d 966 (2018). The State carries the burden to prove that a search and seizure was lawful. *State v. Ton*, 308 Kan. 564, 568, 422 P.3d 678 (2018). To the extent resolving this question requires statutory interpretation, that presents a question of law subject to unlimited review. *Alvarez*, 309 Kan. at 205.

*The officer had a reasonable suspicion that Smith violated the law when she failed to signal as required by K.S.A. 8-1548(a)-(b).*

A traffic stop for a suspected violation of law is a seizure under the Fourth Amendment, so it is subject to the constitutional requirement of reasonableness. *State v. Smith*, 286 Kan. 402, 406, 184 P.3d 890 (2008). To justify this type of seizure, an officer needs only reasonable suspicion, which is "'a particularized and objective basis for suspecting the particular person stopped'" of breaking the law. *Navarette v. California*, 572 U.S. 393, 396, 134 S. Ct. 1683, 188 L. Ed. 2d 680 (2014).

The question for this court then is whether the facts presented support the district court's conclusion that Dykstra had reasonable suspicion of a traffic violation, thus justifying the initial seizure. We have already found that there was sufficient evidence to

12

find beyond a reasonable doubt that Smith failed to properly signal a lane change. Officer Dykstra's testimony along with the Axon camera footage clearly established the lesser standard of reasonable suspicion of a traffic offense justifying the stop.

Moreover, during the suppression hearing, Dykstra noted that he observed two violations:  (1) Smith failing to signal at all before moving into the turn lane, and (2) failing to signal at least 100 feet before turning at the intersection. Smith essentially ignores the first uncharged violation. The improper signal provision prohibits either turning without signaling or "mov[ing] right or left upon a roadway" without signaling. K.S.A. 8-1548(a); *DeMarco*, 263 Kan. at 733 ("K.S.A. 8-1548 requires a lane change signal within 100 feet of the point where the vehicle makes the lane change, regardless of whether there is any traffic moving in front of or behind the vehicle."); see also *United States v. Ortega*, 379 F. Supp. 2d 1177, 1183 (D. Kan. 2005) (rejecting argument that defendant did not have to signal when merging onto interstate from on-ramp). As a result, Smith needed to signal at least 100 feet before entering the designated turn lane. She stipulated that she did not signal any movement until after she got into the turn lane.

For these reasons, Smith has not shown she is entitled to relief. The plain language of K.S.A. 8-1548 requires a driver to signal their intention to turn or move right or left on the roadway continuously for at least 100 feet before turning. Dykstra observed Smith move into a turn lane without signaling, then activate her left turn signal only 30 feet before turning. Thus, Dykstra had reasonable suspicion she violated K.S.A. 8-1548 and the traffic stop was valid. Because the reason for the stop is the only basis upon which Smith challenges the district court's denial of her motion to suppress, her challenge fails.

Affirmed.